UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-58 (JNE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | PLEA AGREEMENT AND |
| v. | ) | SENTENCING STIPULATIONS |
| | ) | |
| ANTHONY JAMES KAZMIERCZAK, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and the defendant, Anthony James Kazmierczak, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. It does not bind any other United States Attorney's Office or any other federal or state agency.

1.  **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, charging the defendant with Assaulting a United States Officer, in violation of 18 U.S.C. § 111(a)(1), which carries a statutory maximum term of 96 months' imprisonment. The defendant fully understands the nature and elements of the crime to which he is pleading guilty pursuant to this Plea Agreement.

2.  **Factual Basis**. In pleading guilty, the defendant admits the following facts and agrees that these facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

  a.  On the evening of January 27, 2026, United States Rep. Ilhan Omar, an officer and employee of the United States as designated in Section 1114 of Title 18, was conducting an official Town Hall meeting at Urban League Twin Cities, 2100 Plymouth Avenue North, Minneapolis, MN 55411.

b.     During the meeting, Rep. Omar called on then-Department of Homeland Security (DHS) Secretary Kristi Noem to resign. The defendant, who was seated in the front row of the audience in attendance, suddenly stood up and quickly approached Rep. Omar at the front of the room, where she was speaking.

c.     The defendant had a syringe in his hand, and as he approached Rep. Omar, he sprayed her with liquid from the syringe that was later identified as a mixture of water and apple cider vinegar. Lab analysis determined the liquid contained acetic acid. As the defendant sprayed the liquid from the syringe on Rep. Omar, he shouted, "She's not resigning. You're splitting Minnesotans apart." The defendant gestured at Rep. Omar while backing away, and he was brought to the floor by a security officer from Rep. Omar's security detail.

d.     The liquid sprayed by the defendant from the syringe landed on Rep. Omar's jacket. The FBI interviewed a security guard who said he saw droplets of the liquid on Rep. Omar's face. Rep. Omar told the FBI that she also felt the liquid on her hand.

e.     The Town Hall meeting was briefly interrupted, but Rep. Omar continued the meeting and her remarks.

f.     The defendant was escorted out of the room by security officers and out the back door of the building, and Minneapolis Police (MPD) were summoned. As an MPD officer approached him, the defendant spontaneously stated, "I squirted vinegar."

3.     **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved by the Court and to file any additional pre-trial motions in this case. The defendant further agrees that, by pleading guilty, he is knowingly and voluntarily withdrawing any motions previously filed.

4.     **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed

innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.    **<u>Additional Consequences</u>**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and

nevertheless still wants to plead guilty in accord with the terms of this plea agreement.

6.   **Statutory Penalties**.  The parties agree that Count 1 carries the following statutory penalties:

    a. a maximum term of 8 years' imprisonment, a Class D felony. (18 U.S.C. §§ 111(a) and 3559(a)(3));

    b. a supervised release term of not more than 3 years. (18 U.S.C. §§ 3559 (a)(3) and 3583(b)(2));

    c. a maximum fine of $250,000. (18 U.S.C. §§ 111(a) and 3571(b)(3)); and

    d. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7.   **Guidelines Calculations**.  The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines.  The parties also acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and the parties stipulate to the following Guidelines calculations.  Notwithstanding the following stipulations, nothing in this plea agreement prevents the parties from bringing to the attention of the Court and the Probation Office all information in their possession regarding the offense(s), including relevant conduct, and the defendant's background:

    a.   **Base Offense Level**.  The parties agree that the <u>base offense level is 10</u>. USSG § 2A2.4(a).

    b.   **Specific Offense Characteristics**. The parties agree that because the offense involved physical contact, the base offense level is <u>increased by an additional 3 levels</u>. USSG § 2A2.4(b)(1)(A).

The parties agree that no other specific offense characteristics apply.

c.      **Chapter 3 Adjustments**.  The parties agree that, other than provided for in paragraph d. below for acceptance of responsibility, no other Chapter Three adjustments apply.[1]

d.      **Acceptance of Responsibility**. The United States agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).[2]  Whether this reduction is granted shall be determined by the Court in its discretion.  The defendant understands and agrees, however, that the government's recommendation is conditioned upon the following: (1) the defendant testifies truthfully during the change-of-plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant does not engage in any conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this plea agreement, however, limits the right of the government, pursuant to USSG § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e.      **Zero-Point Offender Adjustment**. The defendant believes that he has zero criminal-history points and no disqualifying conduct, and therefore qualifies for an additional two-level decrease under USSG § 4C1.1.  The government reserves the right to oppose the application of this adjustment at sentencing.  The parties agree that whether this adjustment applies will be determined by the Court at the time of sentencing.

After applying all adjustments, the **adjusted total offense level is either 9 (13-2-2) or 11 (13-2)**.

f.      **Criminal History Category**. The parties believe that at the time of sentencing the defendant's Criminal History Category is **I.**  USSG § 4A1.1.  This does not constitute a stipulation, but a belief based on an assessment of the information currently known.  The defendant's actual criminal history and related status will be determined by the Court based on

---

[1] The Chapter 3 adjustment under USSG § 3A1.2(a)(1) & (2) for "Official Victim" is not applicable because the offense of conviction is a § 2A2.4 offense.

[2] Because the Total Offense Level is less than 16, the defendant is not entitled to an additional third-level reduction.  USSG § 3E1.1(b)

the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within their criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on their true criminal history category, and the defendant will not be permitted to withdraw from this Plea Agreement. USSG § 4A1.1.

g. **Guidelines Ranges**. If the adjusted total offense level is 9, and the criminal history category is I, the advisory Guidelines range is 4 to 10 months' imprisonment. If the adjusted total offense level is 11, and the criminal history category is I, the advisory Guidelines range is 8 to 14 months' imprisonment.

h. **Fine Range**. If the adjusted total offense level is 9, the applicable fine range is $2,000 to $20,000. If the adjusted total offense level is 11, the applicable fine range is $4,000 to $40,000. USSG § 5E1.2(c).

i. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100.00 for each count, for a total of $100. USSG § 5E1.3. The defendant understands and agrees that this special assessment is due and payable at the time of sentencing.

j. **Supervised Release**. The Guidelines provide for a term of supervised release of not more than 3 years. USSG § 5D1.2(a)(2).

8. **Discretion of the Court**. The foregoing stipulations bind the parties but not the Court. The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines the applicable Guidelines calculations and/or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.    **Sentencing Recommendation and Departures**.  The defendant is free to advocate for whatever sentence he deems appropriate.  The government agrees to not advocate for a sentence greater than the high-end of the applicable Guidelines range.  The parties also reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

10.    **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3).  *See* USSG §§ 7B1.4, 7B1.5.   The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11.    **Waiver of Freedom of Information Act and Privacy Act**.   In exchange for the concessions of the United States made herein, the defendant agrees to waive all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

12.   **Waivers of Appeal and Postconviction Petition**.   The defendant hereby waives the right to appeal any non-jurisdictional issues.  This appeal waiver includes, but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentences imposed, including the sentence imposed for the supervised-release violation, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty.  The parties agree, however, that excluded from this waiver is an appeal by the defendant of the substantive reasonableness of an imposed term of imprisonment that is above the high-end of the applicable Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.  Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney.  The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of an imposed term of imprisonment that is below the low-end of the applicable Guidelines range.

13.    **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that he has read the entire agreement and has reviewed every part of it with his counsel; (b) that he fully understands this plea agreement; (c) that he is pleading guilty because he is in fact guilty of committing the crimes to which he is pleading guilty; (d) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (e) that he is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (f) that he has entered into this plea agreement freely, knowingly, and voluntarily; and, (g) that his decision to plead guilty in accord with

the terms and conditions of this plea agreement is not the result of any threats or coercion directed at him or anyone connected with him.


Dated: MAY 7, 2026

DANIEL N. ROSEN
United States Attorney

BY: BENJAMIN BEJAR
Assistant United States Attorney
District of Minnesota


Dated: 5-7-26

ANTHONY JAMES KAZMIERCZAK
Defendant


Dated: May 7, 2026

JOHN FOSSUM, Esq.
Attorney for Defendant